IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, by its trustee JUAN NEGRON,

**Plaintiff**

v.

UNION DE CARPINTEROS DE PUERTO RICO, GERMAN RIVERA-ROSADO, RAFAEL RODRIGUEZ-PAGAN

**Defendants**

**CIVIL NO.** 22-1267 (RAM)

**OPINION AND PERMANENT INJUNCTION ORDER**

On June 9, 2022, Plaintiff International Association of Machinists and Aerospace Workers AFL-CIO's ("Plaintiff," "IAMAW" or "the International") filed a *Complaint for Enforcement of Trusteeship* ("*Complaint*") for injunctive and declaratory relief pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Title III of Labor Management Relations and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.,* against Union De Carpinteros De Puerto Rico ("UCPR," "Local" or "LL 2252-C") and Germán Rivera-Rosado ("Mr. Rivera-Rosado") and Rafael Rodríguez-Pagán ("Mr. Rodríguez-Pagán") (jointly, "Defendants"). (Docket No. 1).

On June 27, 2017, Mr. Rivera-Rosado and Mr. Rodríguez-Pagán (jointly, "Individual Defendants") filed a *Motion by German Rivera*

*Rosado And By Rafael Rodriguez Pagan, Voluntarly [sic] Submitting To The Jurisdiction Of The Honorable Court And Informing That They Will Not Oppose Nor Raise Any Defense To The Temporary Restaining [sic] Order* (“*Motion*”). (Docket No. 47).[1] They averred that per a Settlement Agreement between the parties, they: (1) would not raise any defenseto the *Complaint*; (2) consent to the Temporary Restraining Order (“TRO”) issued on June 10, 2022 and Plaintiff’s pending Injunction Request; and (3) request that Judgment be entered against them without the imposition of any costs or attorney fees. Id.[2] The Court subsequently granted the *Motion*. (Docket No. 50). Plaintiff and UCPR then filed *The International’s and the Local’s Response to Defendant’s Motion at ECF No. 47 And Motion For Entry Of Judgment* (“*Motion for Judgment*”) reiterating the execution of the settlement agreement and requesting entry of judgment. (Docket No. 51). The Court highlights some of the Settlement Agreement’s most salient stipulations:

[1] While the Individual Defendants voluntarily submitted themselves to the Court’s jurisdiction, the Court nonetheless had jurisdiction over the present case. To wit, the *Complaint* properly invoked jurisdiction pursuant to 29 U.S.C. § 185(a), which permits suits between labor organizations for contract violations, the main issue here. (Docket No. 1); *see* United Ass'n of Journeymen & Apprentices v. Local 334, United Ass'n of Journeymen & Apprentices, 452 U.S. 615, 619 (1981) (finding that, since union constitutions are “labor contracts,” the court has jurisdiction to enforce their terms); *see also* Lydon v. Loc. 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 54 (1st Cir. 2014).

[2] The parties originally filed a Spanish version of the Settlement Agreement, but later filed a certified translation. (Docket Nos. 51-1, 54-1).

A. The Individual Defendants agree to accept every allegation in the *Complaint*, the TRO and request for injunction (Docket Nos. 1, 3 and 9) in the present case.

B. The Individual Defendants agree to not raise any affirmative defenses and withdraw any allegations in this case.[3]

C. The Individual Defendants agree to fully cooperate with IAMAW's trusteeship and audit process and with any other proceeding to which they or other Union members could be subject to.

D. The Individual Defendants agree to cooperate with all disciplinary, administrative, and/or any other proceeding of any nature related to the facts of the case, and/or that arise from the audit to be conducted and that the UCPR and/or IAMAW may establish against them or against any other member, employee, directive, or agent of the UCPR, with their respective Bylaws and/or Constitution.

E. Plaintiff waives any request for attorney's fees and costs.[4]

---

[3] On June 20, 2022, UCPR filed suit against IAMAW and Trustee Juan Negron requesting relief under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, Title III of Labor Management Relations and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, and state law. (Civil Case No. 22-1293, Docket No. 1). It averred the Affiliation Agreement between UCPR and IAMAW is null and void and violates Plaintiff's Constitution. Id. UCPR later requested voluntary dismissal, which was ordered by the Court. (Docket Nos. 7, 9).

[4] Although the parties at all times requested Judgment be entered without the imposition of costs or attorney fees, the translated Settlement Agreement

F. The Individual Defendants can continue to be Union members; however, they cannot hold executive or elected offices within IAMAW, LL 2252-C or any IAMAW local lodge in Puerto Rico for three years.

(Docket No. 54-1).

The *Motion for Judgment* also stated that IAMAW "has not waived – and the parties understood that it did not – any right whatsoever with regards to additional proceedings, including taking any disciplinary, legal, or whatever other action that may arise from" IAMAW's audit. (Docket No. 51 at 2-3). The Court subsequently granted the *Motion for Judgment*. (Docket No. 53).

## I. FINDINGS OF FACT[5]

Based on the Individual Defendants' failure to contest the *Complaint* and the *Motion for a Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law* (), the record before the Court, and Fed. R. Civ. P. 52 (a), the Court makes the following findings of fact:

1. IAMAW has established prima facie that this Court has jurisdiction over the parties and subject matter herein.

erroneously states that the Individual Defendants request Judgment be issued "with imposition of costs and attorneys fees." (Docket Nos. 47, 51, 51-1 and 54-1).

[5] References to a Finding of Fact shall be cited as follows: (Fact ¶__).

2. IAMAW established prima facie evidence showing that LL 2252-C signed an affiliation agreement ("the Agreement") with IAMAW on April 24, 2019. (Docket No. 3-3).

3. The Agreement states that upon its ratification, IAMAW shall charter UCPR as a local lodge, directly affiliated with the IAMAW Grand Lodge, and UCPR will keep its status as an affiliated lodge continuously thereafter. Id. at 2.

4. The Agreement also states that "the newly charter local and its members shall comply with all provisions of the IAMAW Constitution." Id.

5. Section 7 of Article VI of IAMAW's Constitution, states that the International President ("I.P.") is empowered with "the general supervision, direction and control of all L.Ls., D.Ls., councils and conferences and the officers thereof" and which includes the "authority to place under his/her direct supervision, direction and control any L.L., D.L., council or conference when he/she determines that the good and welfare of this Association or the membership is placed in jeopardy" for reasons justifying a trusteeship, and with the approval of the Executive Council ("E.C.").(Docket No. 3-2 at 53).

6. Further, Section 5 of Article VII states:

> The G.S.T. [or General Secretary-Treasurer] shall audit the books of any L.L., D.L., council or conference whenever in

> his/her opinion such an audit is advisable; such audits shall include health and welfare funds, insurance or benefit funds, building associations, etc., which are operated in the interests of the members or administered and directed under the control of the L.L., D.L., council or conference"
>
> . . .
>
> Upon demand therefore by the G.S.T., the officers of any L.L., D.L., council or conference shall forth-with surrender and turn over to the G.S.T. or to an auditor whom he/she may designate, all books, vouchers, bills, receipts and records of such L.L., D.L., council or conference. Any L.L., D.L., council or conference or officer thereof, who refuses to comply with the provisions of this SEC. shall be liable to suspension or expulsion by the E.C. (Docket No. 3-2 at 62-63).

7. IAMAW established that on May 25, 2022, IAMAW Associate General Counsel Laura Ewan ("AGC Ewan") e-mailed Mr. Rivera-Rosado, President of LL 2252-C, stating that the Grand Lodge would begin an auditing process of LL 2252-C on June 6, 2022. (Docket No. 3-4).
8. AGC Ewan also provided Plaintiff with a copy of IAMAW's Constitution authorizing the Grand Lodge to conduct the audit. Id.
9. Ms. María Baez confirmed that Mr. Rivera-Rosado was forwarded the audit request. (Docket No. 3-5).
10. On June 3, 2022, Mr. Rivera-Rosado sent a letter to AGC Ewan stating that the Agreement was "null, void and totally

invalid" and that UCPR would not be "participat[ing] in any type of audit over its operations, since" IAMAW does not have "rights to conduct the same." (Docket No. 3-6).

11. On June 3, 2022, Mr. Rickey Wallace, the General Vice President of the Southern Territory of IAMAW which oversees LL 2252-C, explained in a letter to IAMAW's I.P. Mr. Robert Martinez ("Mr. Martinez"), that by attempting to unaffiliate with IAMAW, LL 2252-C was "endager[ing] the good and welfare of" its members and requested that LL 2252-C be placed under trusteeship immediately. (Docket No. 3-7 at 2).

12. On June 8, 2022, the Mr. Martinez sent a letter to LL 2252-C's officers stating he was imposing a trusteeship on UCPR as authorized under IAMAW's Constitution and appointing Special Assistant to the I.P. Mr. Juan Negron ("Mr. Negron") as a temporary trustee. (Docket No. 3-8).

13. On June 8, 2022, Mr. Negron went with AGC Ewan, Special Representative to the I.P. Tony Blevins, Grand Lodge Auditor Mariaelena Fuentes and Servicing Representative Jose "Lole" Rodriguez Baez to LL 2252-C's offices to meet with Mr. Rivera-Rosado and Mr. Rodríguez-Pagán, the Vice-President of LL 2252-C, but were unable to meet with them. (Docket No. 3-1 ¶ 16).

14. After communicating with Mr. Rivera-Rosado and Mr. Rodríguez-Pagán via Whatsapp, and who still refused to meet with Mr. Negron, IAMAW's representatives slid the notices of the trusteeship under the office door of LL 2252-C and sent copies of the same through USPS certified mail. Id. ¶ 17.

15. IAMAW established that, per the Affiliate Agreement and in accordance with the IAMAW Constitution, it can audit an affiliate's books. (Docket Nos. 3-2 at 62-63; 3-3 at 2).

16. IAMAW has also shown it has been unable to implement the trusteeship, that the books and record of LLC 2252-C have not been turned over and that an audit of the same has not been conducted. (Docket Nos. 1 ¶ 4.13 – 4.31; 3-7 at 2).

17. IAMAW prevailed on its claims of breach of IAMAW's Constitution in violation of Section 301 of the LMRA, and of Title III of LMRDA. (Docket No. 1 at 11-12).

18. IAMAW is suffering immediate and irreparable injury due to the Individual Defendants' failure to participate in the audit process of LL 2252-C. It will continue to suffer this harm and injury if a permanent injunction is not issued.

19. The potential harm caused to the Individual Defendants is insufficient to preclude the Court from issuing this order.

20. The equities herein weigh heavily in Plaintiff's favor and thus for the issuance of this permanent injunction.

21. The public interest in protecting the good and welfare of LL 2252-C’s members will be furthered by the issuance of this order prohibiting the Individual Defendants from continuing to violate its Affiliate Agreement with IAMAW and refusing to adhere to the trusteeship.
22. On June 6, 2022, the Court issued a TRO. (Docket No. 9).
23. On June 24, 2022, the Court held a Show Cause Hearing where the Individual Defendants indicated they were not able to show cause as to why the injunction should not be ordered. (Docket No. 45).
24. The Court found the Individual Defendants did not comply with the TRO issued on June 6, 2022 and extended the TRO an additional fourteen (14) days. Id.
25. On June 27, 2017, the Individual Defendants filed a *Motion* averring that pursuant to a Settlement Agreement, they would not raise any defenses to the *Complaint*, would consent to the TRO and an Injunction Request, and request Judgment be entered without the imposition of costs or attorney fees. (Docket No. 47).
26. The Court noted and granted the *Motion*. (Docket No. 50).
27. That same day, Plaintiff and UCPR filed the *Motion for Judgment* reiterating the parties had executed a Settlement Agreement resolving the present case and requesting judgment with prejudice. (Docket No. 51 at 2-3).

28. Plaintiff then filed an English-language copy of the Settlement Agreement. (Docket No. 54-1).

## II. LEGAL STANDARDS

### A. Declaratory Judgment

The Declaratory Judgment Act ("DJA") provides that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

It is an enabling act conferring "discretion on the Courts rather than an absolute right upon the litigant." Prime Venture Corp. v. Fennix Glob. Holdings, Inc., 2020 WL 3244333, at *2 (D.P.R. 2020) (quoting DeNovelis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997)). The Supreme Court has held that "case of actual controversy" refers to "the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Thus, the declaration "must fall within 'the type of relief that Article III allows courts to give—'decree[s] of a conclusive character' adjudicating adverse parties' actual rights and interests.'" WM Cap. Partners 53, LLC v. Barreras Inc., 373 F. Supp. 3d 350, 360

(D.P.R. 2019) (quoting In re: Financial Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 111 (1st Cir. 2019)). Declaratory judgment is favored when the judgment: (1) serves a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and provide relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See* Cadillac Unif. & Linen Supply, Inc. v. Cent. Gen. de Trabajadores, 2020 WL 4289389, at *6 (D.P.R. 2020), report and recommendation adopted sub nom. Cadillac Uniforms & Linen Supply, Inc. v. Cent. Gen. de Trabajadores, 2020 WL 4289365, at *1 (D.P.R. 2020) (quotation omitted). It seeks to limit avoidable losses and the unnecessary accrual of damages and to provide a party threatened with liability an early adjudication without waiting until an adversary begins an action after the damage has accrued. Id. (quotation omitted).

**B. Permanent Injunction**

A party seeking a permanent injunction is traditionally required to satisfy a four-factor test, namely that: (1) it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See* Puerto Rico Ass'n of Mayors v. Velez-Martinez, 482 F. Supp. 3d 1, 9 (D.P.R. 2020) (citing Esso Standard Oil Co. v.

Lopez-Freytes, 522 F.3d 136, 148 (1st Cir. 2008)); *see also* eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). When a plaintiff seeks permanent injunctive relief, the test is the same as for preliminary injunctive relief, "except that the movant must show actual success on the merits of the claim, rather than a mere likelihood of success." Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico, 437 F. Supp. 3d 119, 137–38 (D.P.R. 2020) (quoting Caroline T. v. Hudson School Dist., 915 F.2d 752, 755 (1st Cir. 1990)). An injunction is improper when a less drastic remedy will suffice. *See* Greene v. Ablon, 794 F.3d 133, 156–57 (1st Cir. 2015) (quotation omitted).

## III. DISCUSSION

### A. Declaratory Judgment

In the case at bar, Plaintiff requests the Court, pursuant to the authority provided by 28 U.S.C. §§ 2201 and 2202, enter a declaratory judgment pronouncing that: (1) Defendants' failure to recognize and adhere to the trusteeship established by IAMAW's I.P. violates IAMAW's Constitution; (2) Defendants' failure to recognize and adhere to that trusteeship violates Section 301 of the LMRA and Title III of the LRMDA, and (3) the UCPR's building and its assets are assets of UCPR subject to the obligations set forth in IAMAW's Constitution. (Docket No. 12 at 1).

Here, Plaintiff's *Complaint* pleads adequate facts establishing an immediate and real controversy within this Court's

jurisdiction. The principal issue is whether the Individual Defendants, as representatives of UCPR, failed to adhere to the trusteeship set forth in accordance with IAMAW's Constitution. (Docket No. 1). Declaratory judgment would be useful in this case because it would clarify the legal relations in the case at bar and would ensure the trusteeship and related audit process are followed by LL 2252-C *and* the Individual Defendants. Furthermore, a declaratory judgment would clarify the obligations of the parties under IAMAW's Constitution, moreover, considering the Individual Defendants' initial disregard of the Constitution and the trusteeship process. *See* Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, 884 F.3d 48, 58 (1st Cir. 2018) ("A declaratory judgment is often a means to an end rather than an end in and of itself, as its purpose is to determine the rights and obligations of the parties so that they can act in accordance with the law.") (citation omitted).

A declaratory judgment would therefore resolve the legal dispute between the parties and provide a final resolution to the controversy. The Court hereby **GRANTS** Plaintiff's request for declaratory judgment. *See e.g*, Cadillac Unif. & Linen Supply, Inc., 2020 WL 4289389, at *6 (recommending the Court issue a declaratory judgment where the plaintiff sought declaratory relief that the defendant could not arbitrate, or request or compel the plaintiff to arbitrate, unresolved complaints or arbitrations filed by a

labor union, because it would "clarify[] the legal relations at hand" and "would make clear the obligations of the parties[.]").

**B. Permanent Injunction**

Every equitable consideration in the case at bar favors granting the permanent injunction. For reasons set forth above, Plaintiff evidently succeeds on the merits, meeting all permanent injunction factors. More so considering the pending *Motion* and the parties' Settlement Agreement. (Facts ¶¶ 25 and 27).

First, Plaintiff, UCPR and UCPR's members have suffered irreparable harm given that the Individual Defendants placed the good and welfare of UCPR and its membership in jeopardy by obstructing the audit process in violation of IAMAW's Constitution. (Facts ¶¶ 5, 11, 13, 15-16). As a result, IAMAW understood the imposition of a trusteeship over LL 2252-C was and is justified. (Facts ¶¶ 5, 11-17). Moreover, per Section 5 of Article VII of the IAMAW's Constitution, which UCPR agreed to abide by, the audits at issue "include health and welfare funds, insurance or benefit funds, building associations, etc., which are operated **in the interests of the members** or administered and directed under the control of the" local lodge, here LL 2252-C. (Fact ¶ 6) (emphasis added). Therefore, in the case at bar, if the injunction is not granted, there is no guarantee that the Individual Defendants will not continue to interfere with the trusteeship and audit process. *See e.g*, Int'l Bhd. of Boilermakers,

Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Loc. Lodge No. 1244, 1988 WL 114590, at *5 (N.D. Ind. 1988) ("If injunctive relief is denied, the International will be harmed irreparably. Absent an injunction, the International will be unable to exercise its rights under the International constitution and will be unable to protect the rights of its members in their relationship with their employer.")

Second, barring the fact that Plaintiff does not request monetary damages, no other remedy at law would compensate Plaintiff for that injury. The First Circuit has made clear that **"[t]he necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies. The two are flip sides of the same coin; if money damages will fully alleviate harm[,] then the harm cannot be said to be irreparable."** Doble Seis Sport TV, Inc. v. Puerto Rico, 2019 WL 1153432, at *5 (D.P.R. 2019) (quoting Kmart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989)) (emphasis added); *see also* W. Holding Grp., Inc. v. The Mayaguez Port Comm'n, 611 F. Supp. 2d 149, 190 (D.P.R. 2009) ("An injury will only be considered irreparable if no adequate remedy for the injury exists at law." (citing Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986)). Further, the District Court of Puerto Rico has held that "it is sufficient for plaintiff to show that [an] injury is not accurately measurable, given that irreparable harm is a natural sequel." W. Holding Grp., Inc., 611

F. Supp. 2d at 190. (citing Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996)). In the case at bar, the injury caused to Plaintiff and UCPR's members if the injunction is not issued is not readily measurable so that it can be fully alleviated by money damages. Therefore, ensuring that the Individual Defendants do not interfere with trusteeship and audit process through a permanent injunction is the only available remedy at this juncture.

Third, the balance of hardships factor, which requires the court balance "the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue," also tips in Plaintiff's favor. Mercado-Salinas v. Bart Enterprises Intern., Ltd., 671 F.3d 12, 19 (1st Cir. 2011). Injunctive relief is warranted because the burden on the Individual Defendants will not be significant vis-à-vis the ongoing hardships to be suffered by Plaintiff and UCPR's members if the injunction is not issued. The Individual Defendants simply need to give access to Plaintiff to UCPR's records and assets and not interfere with the trusteeship. Further, while the Individual Defendants will no longer be able to hold executive or elected offices within IAMAW, LL 2252-C or any IAMAW local lodge for three years, they will still be UCPR members.

Fourth, the public interest will be served by a permanent injunction. The injunction simply bars the Individual Defendants

from interfering with the contractual provisions of the Affiliation Agreement they agreed to abide by, and which requires compliance with the IAMAW Constitution's, including the provision to audit the local lodge. (Facts ¶¶ 2-4, 6, 15). Courts of Appeals have found that the public interest weighs in favor of the enforcement of an international parent union's power under its constitution. For example, in Int'l Bhd. of Boilermakers v. Loc. Lodge D238 of the Cement, Lime, Gypsum & Allied Workers Div. of the Int'l Bhd. of Boilermakers, the Eleventh Circuit upheld a lower court's preliminary injunction against a local union in a case involving the application of the provisions of the international union's constitution and merger agreement, including the international's "right, upon demand, to all funds, properties books and assets of the trusted body[.]" Int'l Bhd. of Boilermakers v. Loc. Lodge D238 of the Cement, Lime, Gypsum & Allied Workers Div. of the Int'l Bhd. of Boilermakers, 865 F.2d 1228, 1236 (11th Cir. 1989). The Court ultimately held that the injunction did not violate any public interests because "[t]he injunction upholds contractual provisions to which the Local Lodges freely agreed." Id.; *see also* Boilermakers' Bldg. Ass'n v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Boilermakers Loc. 500, 1990 WL 209714, at *14 (D. Or. 1990) (finding that issuance of injunctive relief favoring the parent union and requiring adherence to trusteeship will serve the public

interest given that the local union “and its officers and members agreed to the provisions of the trusteeship as part of the contract of affiliation with the International.”).

## IV. DECLARATORY JUDGMENT

Plaintiff’s request for Declaratory Judgment pursuant to 29 U.S.C. §§ 2201 and 2202 is hereby **GRANTED**. It is hereby **ORDERED** and **ADJUDGED** that:

A. Defendants failed to recognize and adhere to the trusteeship established by the IAMAW International President thereby violating IAMAW’s Constitution;
B. Defendants failed to recognize and adhere to the trusteeship established by the IAMAW’s International President violates Section 301 of the LMRA and Title III of the LMRDA; and
C. The LL 2252-C’s building and its assets are subject to the obligations included in IAMAW’s Constitution.

## V. PERMANENT INJUNCTION

Plaintiff’s request for permanent injunction is hereby **GRANTED.** It is hereby **ORDERED** and **ADJUDGED** that:

- Union De Carpinteros De Puerto Rico,
- German Rivera-Rosado, and
- Rafael Rodriguez-Pagan

as well as their officers, directors, agents, servants, employees, attorneys, assigns and those persons in active concert or participation with them who receive actual notice of the Order,

pending the trial and the determination of this action, or until further notice of this Court from are enjoined from:

A. representing themselves as authorized officers or representatives of IAMAW/ UCPR unless authorized by Mr. Negron or his designee(s); and/or

B. interfering in any manner with the conduct of the Mr. Negron or his designee(s).

Furthermore, they must:

C. grant Mr. Negron and/ or his designee(s) complete and unrestrained access to the local's office;

D. deliver all funds, assets, book, checkbooks, minutes book, and other records belonging to LL 2252-C, and all other property including office space, computers and phones to Mr. Negron or his designee(s);

E. provide a complete accounting of the financial condition of LL 2252-C to Mr. Negron or his designee(s), along with *any and all* financial records and an explanation for all receipts, disbursements, and financial transactions of any kind by LL 2252-C, its officers, representatives, employees and agents;

F. refrain from the destruction, removal, sequestration, or alteration of the funds, assets, books, papers, records, or property of LL 2252-C;

G. refrain from entering into the office of LL 2252-C, unless authorized by Mr. Negron or his designee(s);

H. refrain from interfering with or impeding the use of any of LL 2252-C computer, information or telephone systems or databases; and

I. refrain from interfering in any way with the ability of Mr. Negron or his designee(s) to fulfill LL 2252-C's collective bargaining and other legal obligations.

Each party shall bear its own attorneys' fees and costs. The Court shall retain jurisdiction for enforcement purposes.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of July 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge